UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

MARCUS DARNELL EBRON,

       Plaintiff,

v.                                        CASE NO. 3:12-cv-272-J-32JBT

IMMIGRATION AND CUSTOMS
ENFORCEMENT,

       Defendant.

_____/

## REPORT AND RECOMMENDATION[1]

**THIS CAUSE** is before the Court on Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint ("Motion") (Doc. 34) and Plaintiff's Response ("Response") (Doc. 35). For the reasons that follow, the undersigned **RECOMMENDS** that the Motion be **GRANTED** and Plaintiff's Second Amended Complaint be **DISMISSED with prejudice**.

## I.    Summary

Plaintiff asks the Court to declare that Defendant Immigration and Customs Enforcement ("ICE") violated his confrontation and compulsory process rights when it deported two potential witnesses, Melisio Ortiz-Ortiz and Leonel Benegas-Benegas ("the Subject Witnesses"), in his criminal case in Florida Circuit Court.  The undersigned

---

[1] "Within 14 days after being served with a copy of [this Report and Recommendation], a party may serve and file specific written objections to the proposed findings and recommendations.  A party may respond to another party's objections within 14 days after being served with a copy."  Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1); M.D. Fla. R. 6.02(a).  "A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1).

recommends that his claims fail and Defendant's Motion should be granted for three reasons.  First, neither the undersigned nor Plaintiff can locate any authority for the proposition that ICE violates a criminal defendant's compulsory process and confrontation rights in such a situation.  Although deportation of a criminal defendant's witness can violate a defendant's rights in certain circumstances, the remedy is in the criminal case, e.g., dismissal of the indictment or other sanction, not a separate civil claim against ICE. Second, even assuming such a cause of action exists, Plaintiff fails to state a claim because he does not plausibly allege how the Subject Witnesses' testimony would have been material, noncumulative, and favorable, particularly in light of matters in his state proceeding of which the Court may take judicial notice.  Third, Plaintiff may not circumvent the limitations on habeas corpus relief by attempting to invalidate his underlying state-court conviction through a collateral civil suit in federal court without first exhausting procedures available in state court.

In making this recommendation, the undersigned notes that ICE, by regulation, provides an avenue to prevent the kind of occurrence about which Plaintiff complains. Sections 215.2(a) and 215.3 of Title 8 of the Code of Federal Regulations provide that ICE "shall temporarily prevent the departure" of an alien "who is needed in the United States as a witness in . . . any criminal case under investigation or pending in a court in the United States."  8 C.F.R. §§ 215.2(a) & 215.3(g); *see also People v. Jacinto*, 231 P.3d 341, 348 (Cal. 2010).  To the extent that Plaintiff's attorney unjustifiably failed to take advantage of this procedure, Plaintiff may pursue relief through Florida's post-conviction procedures, *see* Fla. R. Crim. P. 3.850, and then through habeas relief in the federal

courts, if necessary, *see* 28 U.S.C. § 2254.[2]  His remedy is not, however, through a civil suit against ICE.

## II.    Background

### A.    Plaintiff's Second Amended Complaint

Plaintiff's Second Amended Complaint alleges that Plaintiff was convicted of armed burglary and attempted manslaughter in Florida Circuit Court.  (Doc. 32 at ¶71.) According to the State's theory of the case, Plaintiff broke into an apartment occupied by eight persons, many of them illegal aliens, and attempted to rob them at gunpoint. (*See id.* at ¶¶44–61.)  The apartment's occupants resisted, and Plaintiff shot one of them before eventually being subdued.  (*Id.* at ¶44.)  Plaintiff insisted at trial, however, that he was framed.  (*Id.* at ¶¶65–67.)  He testified that he was invited to the apartment, a drug deal began, the apartment's occupants tried to rob him at gunpoint, and the gun discharged in an ensuing struggle.  (*Id.* at ¶¶65–66.)

Six of the apartment's occupants testified at trial. (*Id.* at ¶44–55.)  Their testimony supported the State's theory.  (*Id.* at ¶¶44–56.)  Two others—the Subject Witnesses— were turned over to ICE and deported before the trial began.  (*Id.* at ¶41.)  Plaintiff alleges that the Subject Witnesses would have offered testimony that supported his version of the events. (*Id.* at ¶¶81–84.)  Specifically, although the State's six witnesses testified that they had never seen Plaintiff before the burglary, Plaintiff alleges that the Subject Witnesses would testify that: (1) Plaintiff had met at least some of the apartment's occupants months before the burglary; (2) Plaintiff and at least some of the apartment's

---

[2] The undersigned is not suggesting that Plaintiff's criminal attorney was negligent. In fact, it appears he had good reason to avoid this procedure.  *See infra*, page 5.

occupants did drugs together many times; and (3) the Subject Witnesses saw Plaintiff pleading with three police officers that he had been robbed and framed.  (*Id.* at ¶¶81–82.) Plaintiff also contends that the Subject Witnesses would testify to Plaintiff's version of events inside the apartment (*id.* at ¶¶81–84) and that DNA evidence gathered from the Subject Witnesses would support his testimony.  The Subject Witnesses did not testify, however, and Plaintiff was convicted.  (*Id.* at ¶71.)  He was sentenced to concurrent terms of 35 and 15 years in prison for armed burglary and attempted manslaughter, respectively.  (*Id.* at ¶78.)

After his conviction, Plaintiff's attorney filed a motion for new trial, "which did not include the issue of deportation."  (*Id.* at ¶22.)  Plaintiff then "went pro se" and represented himself at the hearing on his pro se motion for new trial.  (*Id.* at ¶73.)  To aid in his preparation, Plaintiff hired a private investigator to "obtain information from ICE pertaining to the two (2) deportees."  (*Id.* at ¶74.)  However, ICE refused to produce the records to the investigator without a court order.  (*Id.* at ¶75.)  Plaintiff appears to have initially filed this suit to obtain such an order.[3]  (*Id.* at ¶76.)

### B.    Matters Outside the Pleadings

Plaintiff's Second Amended Complaint does not allege much about the hearing on Plaintiff's motion for a new trial.  (*See id.* at ¶73–78.)  The brief that Plaintiff's appellate criminal defense attorney filed in the appeal of his conviction to Florida's First District Court of Appeal ("Plaintiff's Appellate Brief") provides insight, however.[4]  It is proper to

---

[3]  Plaintiff entitled his initial pleading, "Request for I.C.E. Records." (*See* Doc 1.)

[4]  See *Ebron v. State*, Case No. 1D12-3612 (Fla. Dist. Ct. App. 2013).  Plaintiff's appeal was decided on November 20, 2013, and his convictions were affirmed.  Plaintiff filed a timely motion for rehearing on February 21, 2014, and that motion is currently pending.

consider this information in the public record in part because 28 U.S.C. §1915(e)(2) grants

courts "the unusual power to pierce the veil of the complaint's factual allegations" in IFP

cases.  *See Neitzke v. Williams*, 490 U.S. 319, 327 (1989).[5]

At the hearing, Plaintiff questioned his former defense counsel about why he had

not tried to secure the attendance of the Subject Witnesses at trial.   Plaintiff's former

lawyer testified that:

> [He] had sworn statements of two non-testifying witnesses, Melisio Ortiz and Leanell Benegas.  *The statements were very unfavorable to Ebron.*  The two witnesses were not deposed. [He] felt that *the fact that the two witnesses were not available and deposed worked to Ebron's benefit* because there were only six, not eight, witnesses against him.  He did not know if the witnesses had been deported when he was assigned to the case.   [He] said the witnesses' sworn statements were previously taken by the State Attorney.  The statements hurt Ebron's case, and there was no basis to believe the witnesses would have said something different from what was in their sworn statements.

(Plaintiff's Appellate Brief at 22 (emphasis added and internal record citations omitted).)[6]

Plaintiff's motion for new trial was denied.  (Doc. 32 at ¶78.)

## III.   Discussion

The Second Amended Complaint essentially seeks two forms of relief.  (*Id.* at

¶¶88–92.)  First, Plaintiff asks the Court to order Defendant to produce its records relating

to the deportation of the Subject Witnesses.  (*Id.*) Second, Plaintiff asks this Court to enter

---

[5] In addition, a court may otherwise take judicial notice of state-court public records.  *See* Fed. R. Evid. 201; *Horne v. Potter*, 392 F. App'x 800, 802 (11th Cir. 2010) ("The district court properly took judicial notice of the documents in [another case], which were public records that were 'not subject to reasonable dispute.'"); *Plotkin v. United States*, Case No. 5:08-cv-252-Oc-10GRJ, 2011 WL 1103469, at *1 n.2 (M.D. Fla. Mar. 24, 2011) (taking judicial notice of public records from a criminal case).

[6] The transcript of this hearing is not readily available.  If necessary, the Court may direct Defendant to obtain and file it.

a declaratory judgment stating that Defendant violated his federal constitutional rights by deporting the Subject Witnesses.  (*Id.*)

### A.    Plaintiff concedes that he cannot obtain ICE's records through this suit.

Plaintiff, in his response to the Motion, concedes that he "cannot obtain deportation records through this action." (Doc 35 at 10.) The Motion is therefore due to be granted as to this claim for relief and the Court need not reach an independently reasoned decision on the merits of this issue.  *See Boin v. Verizon South, Inc.*, 283 F. Supp. 2d 1254, 1262 n.6 (M.D. Ala. 2003).

### B.    Plaintiff cannot state a claim for the declaratory relief he seeks.

### 1.    Standard

Courts must construe *pro se* litigants' complaints liberally and must not hold them to the same stringent standards that are required of lawyers drafting formal pleadings. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Phillips v. Mashburn*, 746 F.2d 782, 784 (11th Cir. 1984); *see also Ford v. Hunter*, 534 F. App'x 821, 822 n.1 (11th Cir. 2013).   "Still, once a *pro se* IFP litigant is in court, he is subject to the relevant law and rules of court, including the Federal Rules of Civil Procedure." *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989).

The Court must dismiss an IFP plaintiff's claim under 28 U.S.C. § 1915(e) at any time if it determines that the claim "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B); *Bilal v. Driver*, 251 F.3d 1346, 1348 (11th Cir. 2001).

Regarding failure to state a claim, "[t]he language of section 1915(e)(2)(B)(ii) tracks

6

the language of Federal Rule of Civil Procedure 12(b)(6), and we will apply Rule 12(b)(6) standards [to review] dismissals under section 1915(e)(2)(B)(ii)." *Mitchell v. Farcass*, 112 F.3d 1483, 1489–90 (11th Cir. 1997).   An action fails to state a claim on which relief may be granted if it fails to include "a short and plain statement of the claim showing that the pleader is entitled to relief."  *Harper v. Lawrence Cnty.*, 592 F.3d 1227, 1232–33 (11th Cir. 2010) (citing Fed. R. Civ. P. 8(a)(2), 12(b)(6)).  The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.   "Labels and conclusions" or "a formulaic recitation of the elements of a cause of action" that amount to "naked assertions" will not do.  *Id.* at 678.

"A lawsuit is frivolous [under Section 1915(e)(2)(B)(i)] if the plaintiff's realistic chances of ultimate success are slight."  *Clark v. Ga. Paroles Bd.*, 915 F.2d 636, 639 (11th Cir. 1990).   Actions may be frivolous in their factual allegations or in their legal theories.  *Neitzke*, 490 U.S. at 325; *see Clark*, 915 F.2d at 639.  Factual allegations are frivolous when they are clearly baseless, fantastic, or delusional.  *Denton v. Hernandez*, 504 U.S. 25, 32–33 (1992); *Bilal*, 251 F.3d at 1349.  Unsupported and conclusory factual allegations may also meet the clearly baseless standard. *Algieri v. Vanaski*, No. 6:08-cv-766-Orl-31GJK, 2008 WL 5147353, at *3 (M.D. Fla. Dec. 8, 2008); *see Phillips*. 746 F.2d at 785.  A frivolous legal claim is one that is "indisputably meritless."  *Neitzke*, 490 U.S. at 327.

Finally, Section 1915(e) affords "a broad grant of discretion to the district courts in

the management of IFP cases." *Clark*, 915 F.2d at 639.  Section 1915 grants judges the "unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Neitzke*, 490 U.S. at 327 (1989). Courts have suggested that Section 1915 may even "be used to bar suit where alternative remedies exist, even if these remedies might not ordinarily have to be exhausted." *Clark*, 915 F.2d at 641.

      **2.**      **Analysis**

             **a.**      **Plaintiff provides no authority permitting a civil suit against ICE for allegedly violating a state (or even federal) criminal defendant's confrontation and due process rights by prematurely deporting his material and favorable witnesses.**

A criminal defendant's rights can be violated by the deportation of potentially favorable witnesses in certain circumstances.  However, in such cases, the defendant's remedy is in the criminal case, e.g., dismissal of the indictment or a missing witness jury instruction, not in a civil suit for declaratory relief against ICE.

The Supreme Court first addressed a situation in which the government deported a criminal defendant's potentially favorable witnesses in *United States v. Valenzuela-Bernal*, 458 U.S. 858 (1982).  In that case, an illegal alien drove five other illegal aliens over the Mexican border into the United States.  His car was stopped near the border and, after a foot chase, U.S. Border Patrol agents arrested the defendant and three of the other aliens.  The government deported two of the aliens before trial and before the defendant had an opportunity to interview them.  *Id.* at 860–62.  The Court observed that such cases place the government between a rock and a hard place:

> The Government may, therefore, find itself confronted with the obligation of prosecuting persons in the position of respondent

> [the criminal defendant] on criminal charges, and at the same
> time obligated to deport other persons involved in the event in
> order to carry out the immigration policies that Congress has
> enacted.

*Id.* at 864.

Recognizing the strong interest the government has in promptly enforcing the country's immigration policy, the court held, "respondent cannot establish a violation of his constitutional right to compulsory process merely by showing that deportation of the [potential witnesses] deprived him of their testimony." *Id.* at 867. Rather, "[h]e must at least make some plausible showing of how their testimony would have been both material and favorable to the defense." *Id.* Since *Valenzuela-Bernal*, this issue has arisen in many other cases around the country, both federal and state. *See generally, e.g.*, *United States v. Santil*, 753 F.2d 984 (11th Cir. 1985); *United States v. Schaefer*, 709 F.2d 1383 (11th Cir. 1983); *United States v. Subran*, Case No. 07-60238-CR, 2008 WL 821891 (S.D. Fla. Mar. 20, 2008); *People v. Jacinto*, 49 Cal. 4th 263 (2010); *State v. Engle*, 731 N.W.2d 852 (Min. Ct. App. 2007); *Guzman v. State*, Case No. 04-02-00198-CR, 2003 WL 22336052 (Tx. Ct. App. Oct. 15, 2003). In each of these cases, the criminal defendant raised the issue in the context of his criminal case, and sought a remedy in that case—such as dismissal of the indictment.

In accordance with this authority, Defendant argues, "Plaintiff cannot state a claim for violation of his Fifth and Sixth Amendment rights against the United States because Plaintiff is not in federal custody, and was not prosecuted by the federal government." (Doc. 34 at 12.) Defendant further observes that it "is not aware of any authority holding ICE or any other federal entity civilly liable in a situation such as this." (*Id.* at 13.) Plaintiff has likewise presented no such case. The undersigned's own research reveals none.

9

Plaintiff therefore appears to ask the Court to create a new civil remedy. The undersigned respectfully recommends that this Court need not do so, particularly given the already existing remedies, such as ICE's regulations, *see* 8 C.F.R. §§ 215.2 & 215.3, sanctions in the underlying criminal case, and collateral attacks on a criminal conviction.

> **b.** **Even assuming the viability of a potential cause of action against ICE, Plaintiff cannot plausibly allege that the Subject Witnesses would have provided material, favorable, and non-cumulative information.**

Plaintiff's suit suffers a further deficiency. Even assuming that some type of civil claim against ICE existed, a plaintiff would at least have to make a plausible showing that the deported witness's testimony would have been "material," "favorable," and not "merely cumulative to the testimony of available witnesses." *Valenzuela-Bernal*, 458 U.S. at 873. Given that in such circumstances a defendant necessarily lacks access to the deported witness, "the defendant cannot be expected to render a detailed description" of the witness's lost testimony. *Id.* However, "[a] defendant cannot simply hypothesize the most helpful testimony a deported witness could provide." *United States v. Schaefer*, 709 F.2d 1383, 1386 (11th Cir. 1983). "Rather, he must show some reasonable basis to believe that the deported witness would testify to material and favorable facts." *Id.*

The Eleventh Circuit's decision in *United States v. Schaefer* illustrates this requirement. In that case, a criminal defendant was convicted of helping three foreign nationals unload a vessel bringing marijuana from Colombia to Miami. *Id.* at 1384. Two of these foreign nationals identified the defendant, who had a mustache, from a photo spread. *Id.* The third was not asked to identify the defendant from a photo array, and did not do so. *Id.* at 1384–85. Instead, the third foreign national testified before a grand jury that a man with a mustache helped them unload the boat, but provided no other relevant

detail.  *Id.* This third national was deported prior to trial.  *Id.* at 1985.  The defendant

moved to dismiss the indictment, arguing that this third witness might have been unable

to identify the defendant at trial or might have testified that the defendant was not the one

who helped unload the drugs.  *Id.*  The district court granted the motion but the Eleventh

Circuit reversed.  *Id.* at 1387.

The Eleventh Circuit reasoned that the defendant failed to make a plausible and

reasonable showing that the deported witness would provide favorable, material, and

noncumulative testimony.  The court rejected the defendant's contention that the deported

witness may have testified that the defendant was not the person who helped unload the

drugs:

> There is no basis on this record, however, to assume that [the
> deported witness] would testify to this effect.  The defendant
> does not suggest any inconsistency between [the deported
> witness's] testimony and the identification by [the other two
> witnesses] of the defendant.  He has not proffered any other
> evidence implying that [the deported witness's] testimony
> would contradict or even differ from that of [the other two].

*Id.* at 1386.  The court further observed that the deported witness's prior sworn statement

to the grand jury corroborated the other witnesses' statements.  *Id.* at 1985.

Even assuming the truth of Plaintiff's allegations in the Second Amended

Complaint, such allegations are no stronger than the *Schaeffer* defendant's showing.

Plaintiff offers nothing but conclusory allegations to support his contention that the Subject

Witnesses would have contradicted the other six occupants of the subject premises.

Indeed, his Second Amended Complaint alleges that "*all witnesses*," including the Subject

Witnesses, gave sworn statements consistent with the state's theory at trial and that the

state provided these statements to him in mid-November of 2010.  (Doc. 32 at ¶18.)

11

Moreover, even assuming the allegations alone satisfied the *Valenzuela-Bernal* standard, the plausibility of such allegations would be eviscerated by Plaintiff's attorney's testimony at the hearing on his motion for new trial that the Subject Witnesses' statements "were very unfavorable" and that the unavailability of the witnesses actually helped Plaintiff's criminal case.   (Plaintiff's Appellate Brief at 22).   Accordingly, Plaintiff has failed to plausibly allege that the Subject Witnesses would have provided material, favorable, and noncumulative testimony, as *Valenzuela-Bernal* requires in the criminal context.   For this additional reason, Plaintiff's claim is due to be dismissed with prejudice.

### c.   Plaintiff's claims are not properly brought in an action for declaratory relief.

Finally, the case comes before the Court in an inappropriate procedural posture. Plaintiff appears to have filed this action because someone at ICE told his private investigator that he could not obtain the Subject Witnesses' deportation records without a federal court order.  (Doc. 32 at ¶74–76.)  Plaintiff has since acknowledged that he cannot obtain such an order, but he has changed the nature of his case.[7]  Instead, Plaintiff now seeks a declaration that ICE violated his rights by deporting the Subject Witnesses. In essence, Plaintiff is seeking to attack his underlying state-court criminal conviction, and therefore his suit is procedurally improper.

In its prior Order detailing the apparent deficiencies in Plaintiff's claim, the Court observed that "[u]nder certain circumstances, this Court will not interfere in [] ongoing

---

[7] In its response to a prior motion, Defendant inferred that Plaintiff obtained the help of an attorney around the time of this shift.  (Doc. 25 at 2–3.)  Plaintiff, however, insists that "all pleadings and filings submitted to this Court have been prepared by me, without the assistance of counsel or other legal advi[c]e."  (Doc. 26 at 1.)  Although the undersigned is skeptical of this assertion, no further action is recommended given the recommendation for dismissal with prejudice.

state proceedings or issue any rulings that may affect the validity of a state criminal conviction." (Doc. 28 at 4.)  Specifically, "when a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus." *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973).  An application for such a writ shall not be granted unless it appears that "the applicant has exhausted the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(1)(A); *see also Hogan v. Lukhard*, 351 F. Supp. 1112, 1113 (E.D. Va. 1972). "[C]ivil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments . . . ."  *Heck v. Humphrey*, 512 U.S. 477, 486 (1994).

Here, Plaintiff's Second Amended Complaint (liberally construed) seeks a declaration that his criminal trial and conviction occurred in violation of his confrontation and compulsory process rights because ICE deported the Subject Witnesses.  Such a declaration "would necessarily imply the invalidity of his conviction." *Id.* at 487. [8]  "If the Court were to grant a declaration in his favor, then he would immediately file for a writ of habeas corpus." *Hogan*, 351 F.Supp. at 1114.  He would first have to exhaust his remedies in state court.  There, "that Court would be confronted with a previously rendered federal declaration that the State [] process is unconstitutional." *Id.*  "Such a process of litigation violates both the letter and spirit of the theory of comity" integral to our federal system. *Id.*  For this third reason, Plaintiff's suit should be dismissed with

---

[8] The undersigned is aware that in order to get his conviction overturned, Plaintiff might also have to show some state involvement in, or at least awareness of, the deportation of these witnesses.  However, Florida law appears unclear and/or undeveloped on this point.  Suffice it to say, the declaration Plaintiff seeks would throw into doubt the validity of his Florida conviction.

prejudice.[9]

## RECOMMENDATION

Accordingly, it is respectfully **RECOMMENDED** that:

1.      Defendant's Motion (**Doc. 34**) be **GRANTED**.

2.      Plaintiff's Second Amended Complaint (**Doc. 32**) be **DISMISSED with prejudice**.

**DONE** and **ENTERED** at Jacksonville, Florida, on March 3, 2014.

JOEL B. TOOMEY
United States Magistrate Judge

Copies to:

The Honorable Timothy J. Corrigan
United States District Judge

Pro Se Plaintiff

Counsel of Record

---

[9] Defendant also argues that Plaintiff's claims are barred by sovereign immunity. (Doc. 34 at 13–14.)  Because the undersigned recommends dismissal on the foregoing multiple grounds, it is also recommended that the Court need not decide this issue.